And we will proceed. You may have a seat. Mr. Rainey, you may save out some time for rebuttal. Thank you, Your Honor. If I could just request five minutes for rebuttal. All right. You may proceed. May it please the Court? Your Honor, we raised five issues in the opening brief, and today, with your permission, I'd like to focus on argument two, those being that the State failed to prove Mr. Jackson actually or constructively possessed Everett Clinton's rifle, and also failed to establish the corpus delicti of the charged offenses. Time for me to briefly touch on argument three as well, being that a crankle hearing is warranted. Regarding issues one and two, the evidence of trial showed that police found a gun belonging to a man named Everett Clinton. The gun was found in Everett's house that he shared with his sister and nephew in his own bedroom. The trial court found that Everett put the gun under a bed several days before police found it in the exact same place. No witness had ever seen Mr. Jackson possess the gun. He had never been seen in that bedroom. There was no physical evidence, such as fingerprints linking Mr. Jackson to the gun. There was no evidence Jackson had keys to the home, clothes in the house, or that he had a gun. There was mail showing that was addressed to a different address that three other defense witnesses testified Mr. Jackson lived at. Was that mail in the room where the gun was found? Yes, it was, Your Honor. Does that matter? No, Your Honor, it doesn't. Does that show that he was at least in that room at some point? No, and the reason is because we know that a credible defense witness, Victoria Clinton, testified she picked up the mail. So I think based on the facts, it would be reasonable to infer that she put the, after picking up the mail, put it in that room. However, even if he were in that room at some point, that wouldn't be enough to establish possession. And particularly, I believe that would go to constructive possession. And for constructive possession, under this Court's opinion and Sam's, the state has to be acknowledged plus exclusive control. Sam's was a little bit different, though, wasn't it? The only difference between this case and Sam's is Mr. Jackson's unmemorialized statement. But as far as the issue of constructive possession, Sam's is really directly on point. Refresh my memory. What was the statement in Sam's? There was no statement in Sam's. That's the difference, basically, between Sam's and this case. Right. Okay. So that is a big difference, though. That is a big difference. However... Also, wasn't Sam's a case where the police were responding to, was it shots fired? A 911 call. It was a 911 call. At a particular address, and he was actually just walking out the door of the building when they got there. That's correct. No one actually, not even the officers, had him inside the building. The fact that he was walking out of the building implies that he was in the building. Was it a single family home? In Sam's or in this case? In Sam's. I believe so. But the facts that are identical to this case in Sam's are that the defendant in Sam's had never been seen in the room where the gun was found.  So no evidence of any mail or anything being at that home. That's correct. But again, if we're talking about constructive possession, the fact, and if you want to make an inference, that the presence of the mail in the room showed that he was in there at some time. This court has held numerous times in Harris, in Hannah, that the mere presence in the vicinity of contraband is not enough to prove possession. So constructive possession requires proof of knowledge plus exclusive control. So even if we were to assume that at some point between the 17th and 21st he were in that room, it wouldn't show that he controlled the rifle that was under the bed. Isn't immediate and exclusive control kind of a broad concept in these cases? I don't know. I think the cases that find that there is immediate and exclusive control have similar facts. And those facts basically are that the gun that was found was immediately accessible at the time of the search. Was that the case in Hannah, though, that the gun was immediately accessible? Or am I thinking about the other case where the gun is found atop a cabinet? The two cases Your Honor is talking about are Hannah and Spencer. In both cases, the weapons were immediately accessible. In Hannah, the defendant was sitting on top of the bed under which the gun was found. So at the time of the search, the gun was immediately accessible to him. So the presence of the gun under him showed that he exclusively controlled it. Immediate accessibility is basically a factor necessary for constructive possession. But not in Hannah. The gun was actually found on top of a cabinet. Right, but the defendant ran toward the cabinet at the time of the search. He was in the same room as the weapon and was about to access it. And in Smith, the other case that the State says, there was also immediate access to the weapon. Mr. Raine, are you familiar with any case where there was mail of a defendant? I mean U.S. postal mail. Where it was actually a different address and an appellate court said that mail from a different address supports constructive possession? No, absolutely not. And to the contrary, there have been cases where there is mail with the same address that has been found to be insufficient to prove habitation. And that would be People v. Maldonado, where there was actually three pieces of mail with the same address. Why did the court say in that case it wasn't really evidence of habitation? In that case, well, they basically found there was junk mail solicitation and that that wasn't reliable enough. But nonetheless, we had mail with the same address and here we have mail with a different address. Was his ID also found in the room? His ID was found in the room. It wasn't introduced into evidence. And there's no testimony about what address was on the identification. But was there no testimony as to how the ID got there? There was some testimony as to how the mail got there, but what about the ID? There was no testimony as to how the identification got there, but there's no dispute that Mr. Jackson was a guest in the house. He was there to comfort his fiancée after her younger brother assaulted her, so he'd been in the house. And it's not unusual or evidence of habitation or control that one might leave a license somewhere where they've been a guest. Does the warrant have any bearing on the issue of Corpus Electum? Not at all, Your Honor. The warrant wasn't introduced into evidence. The warrant doesn't corroborate anything as it shows the uncorroborated allegations of the warrant show Mr. Jackson possessed a different gun that was found. There was evidence of a warrant in Harris and Leisure, I believe, as well. So the warrant really has no bearing on the issue of possession. Was this what they call an assault rifle? I believe so. I believe it was a Romer. Is that legal in Illinois? I would hope not. Well, really then, if it's contraband per se, isn't that evidence of the Corpus Electum? Do we need more if it's contraband per se? I don't think so. Well, of course, because if it's contraband per se, let's say there's a statute. It's not really in the briefs, but if there's a statute that bans assault rifles in Illinois, why do they have to prove more in this case if they have evidence of a crime of contraband that's illegal per se? Because the question isn't whether there was a gun or whether there was contraband. The question is whether Mr. Jackson had ever possessed it and whether the state, when we're talking about the Corpus Electum issue, whether the state introduced any evidence corroborating possession, not the existence of contraband. It's just like a controlled substance case. Just because heroin or cocaine is found in an apartment doesn't mean that the offense has been established. If you have simply that and someone is in another room and they make a statement regarding the substance. There's something you say about habitation in your brief that only if they have evidence of living there, or it's something about multiple people. I don't know what you're referencing. I didn't find the statement in Sam's. I believe Sam cited some additional cases. At some point it seemed that even if Sam's recognizes itself, habitation may be evidence of constructive possession. It's not per se evidence of constructive possession. There still has to be some control and knowledge. Oh, excuse me. Back to that point. Habitation on its own doesn't prove constructive possession. It may be additional evidence of constructive possession, but where there's no control in the first place and there are multiple residents in the house, and this weapon was found in a room that we know belonged to Everett Clinton, the man who put the gun there and was arrested and somehow avoided culpability for possession by committing a crime against his sister. Did the trial court accept as true that the bedroom was occupied by both Everett and the nephew?  So he found him credible and his version of events credible. So yes, the trial court found basically that this was Everett Clinton's gun, that he put it under the bed, that he was arrested, and then several days later police found it in the exact same place. So that room was occupied by Everett Clinton and Darian Clinton. And Mr. Jackson wouldn't have been in that room even if he were living there, which I maintain the state did not prove, but he would be with his fiancée in her room. And certainly he can't be responsible for everything that's happening in the house. One of the cases I cited, if people would be right, involves a case where a defendant was found in a basement with three other people and a weapon was present and this court reversed his conviction saying his presence in the room wasn't enough. And he was actually in the room in that case at the time of the search when the gun was discovered by the police. But there wasn't evidence of residency or habitation in that case, was there? No, there wasn't. We do have a statement here in addition to I found it, I was going to sell it for some Christmas money, and I'd been living there for, what, the last couple of weeks or something. Right, so regarding the statement, first of all, on his face, the statement doesn't indicate possession. He said he found the gun. But the state's argument is that if he found it, he must have at some point possessed it. Right. My argument is that's an unreasonable inference because there's nothing connecting finding to possession. Coincidentally, this morning, I had lost a credit card last week and I found it this morning behind my couch. It's still there. I haven't possessed it. There's no reason to assume possession based on the fact that he found it. But he said he was planning on selling it, so he was in his own mind exercising control over it, right? He wasn't saying, I found it and I allowed somebody else to take possession of it. No, no, no. Actually, perhaps that his intent to sell in the future could demonstrate he might possess it sometime in the future. But that's a future crime that he can't be charged with until he commits. And also the case of the state sites, which is... No, I understand, but doesn't that speak to his own subjective feeling that it's his gun? No, I think really what it's showing is he's telling the police officer, we saw that this gun was here, it's in a kid's room, it's not safe, we're getting rid of that. It doesn't show his intent. He knows it's Edwards' gun and he doesn't know at this point whether he's coming back or not after he had been arrested. So I think he's saying... When he was talking to the police, did he say it was Edwards' gun and he found it? He did not say that, no. Did he say where he found it? No. My understanding was his statement to the police had nothing to do with this testimony we heard at trial. The explanation at trial by the defense was this was Edwards' gun, right? But when he was talking to the police, he didn't say anything like that, did he? Well, that's correct. You're right. Yes. The case... The state site's case, Smith, saying that intent can prove... If you intend to control something, it demonstrates exclusive control. But the way they presented it isn't exactly accurate. In Smith, really the proposition of law they're taking is intent to control something... Excuse me, to maintain control over something may be additional evidence of constructive possession. But to maintain control over something, there has to be control in the first place. And in Smith, the defendant... There's evidence the defendant controlled the gun because he was sitting next to it on the bus. And then he asked the bus driver for... Basically trying to get this bag with the gun back. And this court found his intent to regain possession showed evidence of constructive possession. So there has to be some control for that intent to prove constructive possession. If there's no control in the first place, your intent to possess something in the future wouldn't be sufficient to prove possession.  I think what you're saying perhaps makes sense. That an intent to do something in the future doesn't show present constructive possession. But I just wondered if you had any... Well, I think Smith stands for that. Well, Smith... I don't know. Smith was... The bus driver saw him sitting in the back of the bus and he was sitting next to the backpack, wasn't he? Right. And that's the evidence of exclusive control that's there in the first place. I mean, it's a little different than this case. Because in Smith, he was actually next to the item, the backpack. And inside that was the gun. And didn't the... Well, I just think actually it's rather different than this case. Well, it's different. And the differences show that the state has failed to meet its burden in this case. Yes, because there was that exclusive control in Smith. So then his evidence of his future intent became relevant. But here without that, it's not relevant. And regarding the statement as well, so as I stated, there... It's not reasonable to infer possession based on his statement that he found the gun. If this court finds that his statement does indicate possession, the statement alone is not enough to prove possession. And under this court's opinion of Harris, the recovery of the gun does not... It's not sufficient to corroborate his statement. Is Harris the case with the car? Yes. And the shooting outside the car? Yes, ma'am. And he had an FOID card? Yes. And in that case, that case is actually similar in this way. The defendant in Harris was alleged to have made a statement saying he possessed a gun on the street, which was after he got out of his car. Police subsequently found a gun in his car. And this court found that the gun was not sufficient to corroborate the statement because there was no evidence of possession after he got out and he was on the street. In this case, we know from the uncontradicted evidence from the witnesses the court found credible that Mr. Jackson had never been to this house before December 17th. So if we can take his statement that he found the gun to indicate possession, we know it happened sometime between 17th and the time of the search on the 21st. But there was no evidence, as in Harris, corroborating possession at that time, after he allegedly possessed the gun. Do you want to wrap it up and leave some time for rebuttal? Absolutely. So in sum, I would ask that you reverse both of his convictions for armed habitual criminal and EW by a felon. And alternatively, if this court doesn't reverse those convictions, to remand for a critical inquiry or an opportunity to file a motion to crush the warrant. And that's based on Arguments 3 and 4. Thank you, Your Honors. All right. Thank you. Ms. Powell. Good morning again. Good morning, Your Honors. May it please the Court, once again, Assistant State's Attorney, Serena Powell, on behalf of the people. On December 21st, 2011, officers executed a search warrant on 7347 South Perry, Unit 1, at around 630 p.m. Pursuant to the search warrant, officers were authorized to search the defendant and the premises at 7347 South Perry and to seize all evidence of illegal firearms, ammunition, and proof of residency. Upon entry into the unit, officers observed defendants sitting on a couch. Was it all firearms or was it a handgun? So the warrant authorized the seizure of all illegal firearms. Okay. Is the warrant in the record? The warrant is attached to the record. Correct. Is the warrant admitted as evidence? The warrant was not admitted as evidence. Could it have been? The warrant wouldn't have been evidence of possession in this case. So your answer is that it could not have been admitted? No. Also present in the unit, along with the defendant, were the defendant's girlfriend, Latoya Clinton, and her son, Darian Clinton. Officers searched the premises, and from the back bedroom under one of the beds, Detective Michael Andrews had recovered a Romarm assault rifle with a fully loaded magazine. Officer Mark Mendoza, who served as the affiant for the search warrant, didn't search that back bedroom. However, he did look in, and he saw that his teammates had recovered a rifle. At that point, he read defendant his Miranda Rights, which defendant stated he understood, and Officer Mendoza asked him where he got the weapon. Defendant stated that he had found it, and he was going to sell it for some extra Christmas money. Does that, those statements, first of all, found, doesn't really say anything other than maybe, perhaps, I saw it under the bed. I found it. I mean, I don't know that that says I actually took possession. But the second part of it, I was going to sell it, okay, is a future statement of something you're going to do evidence of constructive possession, or present possession, perhaps? It is evidence of defendant's possession. It demonstrated, his statement demonstrated both his knowledge of the weapon's presence, and it also demonstrated his intent and his capability to maintain control and dominion over that firearm. He possessed it to the extent that he was going to sell this assault rifle for extra money. It is not logical that he would sell someone else's rifle. Do you agree with counsel that if we separate the statements, that there's no evidence of constructive possession in this case? I'm sorry, can you repeat that? Do you agree? I think counsel is essentially arguing that if you took those statements away, there's no crime. There's no constructive possession in this case. How would you respond to that? There is constructive possession in this case. Without the statements. That's what I'm trying to get from you. In addition to defendant's statements, we did recover defendant's child support documents. But the child support documents evidence only in name, not in address. Right. It was addressed to defendant at a different address. However, they directly tied defendant to that back bedroom where that same rifle was recovered. Well, have you, Ms. Powell, come across a case where evidence of documents tied to a person, unrelated to that address, or in this case, documents that have a different address have ever been used to support possession? I have not come across a case like that. However, in this case, what we have is defendant's statement. There was this statement that defendant not only found this rifle and was going to sell it, but when asked about the mail that the officers recovered from that same back bedroom, he stated that he recently moved into the unit with his girlfriend or his fiance within the last couple of weeks. So what exactly did the officers say to him that drew out this statement that he recently moved in? One of the officers recovered, a different officer recovered defendant's child support documents, and then Officer Mendoza, who was still speaking with defendant, asked him specifically about the mail. A defendant then responded that he recently moved in with his fiance or girlfriend, and then upon further cross of this officer, the officer expounded that he did so within the last couple of weeks, is what he told him. But wasn't there basically uncontradicted testimony from three different individuals that he did not live there, and in fact, a woman testified that he actually lived somewhere else, she was the manager of the building, he had a lease, and he was in fact living there at that time, at the time of December 21st. So all that information was before the trial court, and the court found that in terms of credibility, Officer Mendoza was more credible in his, in relaying the defendant's statement that he had moved into this apartment. So by making that statement, defendant is establishing his residency, he is establishing his control over the unit. But the trial court also found the nephew's testimony to be credible. The nephew testified that there were two beds in the back bedroom, and those beds were occupied by the nephew and the uncle who had since left the unit. So did the trial court make some distinction between which parts of the nephew's testimony were credible and which parts were not? The trial court found that the nephew was credible in terms of the beds, and officers, when they were shown the photo, they did recall there were two beds in the bedroom. The trial court found it wasn't a big point of impeachment about how many beds were in that bedroom. If the defendant, and I believe the young lady's name is Latoya, are in the same unit, does it really make a lot of sense that the defendant is in the bedroom with the nephew and not with the girlfriend? In terms of that back bedroom, we have defendants now tying him to that bedroom. So we know that defendant had knowledge of that. But doesn't the girlfriend testify that she placed that mail with the defendant's name, but a different address in that back bedroom? It's not the defendant who testified that he placed it there. She did testify that. However, that testimony, again, was before the trier of fact, and the trier of fact found that defendant was a resident at this address. There was also testimony. Didn't the trier of fact say something like, he was known to have said, or no, he was known to have found the gun? Is that his statement, the judge? He was known to have found the gun? I think something similar to that. The trial court found that the timeline matched up. After December 17th, the uncle, who had previously been living there, was arrested, and there was no testimony that he returned to this apartment. There was testimony that this was really his rifle. Wasn't that the testimony? The nephew? I'm sorry, Latoya's son, if I may say. He testified it was actually his uncle's gun, his uncle's rifle. And then he didn't tell his mom. He didn't tell his mom, and he also testified after Everett, the uncle, was arrested on December 17th, he never returned to that apartment. On that same day, defendant became a presence in that apartment from December 17th onward. If you compare that with defendant's statement that he recently moved in, we have defendant's control over the rifle. You're not arguing this is an actual possession case, correct? This is a case of constructive possession. And under the constructive possession, there's two things, the knowledge that you argued, and I think it would be a fair argument to say that his statements indicate knowledge. First, at least, that the gun was there, the rifle. But the second prong being immediate and exclusive control. What do you believe establishes beyond a reasonable doubt that this defendant had immediate and exclusive control over that rifle, the mail being in there or his child support order? The mail that tied him directly to that room where the rifle was recovered. His statements, his two statements, that he had found it, was going to sell it, along with that he had recently moved in to that apartment. Okay. If I could interrupt. Is there any testimony about mail, clothes being in there, or anything else that would tie him to that room? We don't have testimony about mail, clothes, anything like that. However, officers did recover his identification. But if somebody was living there, normally there would be evidence of clothing, wouldn't there? Wouldn't that make sense that he moved in a few days before he'd have some clothes there? There might be evidence of clothing. However, the defendant here made a direct statement that he moved in. Yes, he did. But there was no evidence other than this support order that established he was actually living there. Was there? No. What do we do with the evidence that everything indicated he lived somewhere else? There was mail that had a different address. There was mail that had a different address. However, again, a defendant stated that he lived at that address. Yes. But aside from the statement to the corpus delicti, we say, okay, you've got the statement, but is there anything to corroborate? What even slight evidence, alas, be slight, do you have to put him in that bedroom, put that gun in his hands? So this court has repeatedly held that the recovery of a firearm sufficiently corroborates a defendant's incriminating statement. The corpus delicti for this crime was established not just through a defendant's statement, that's just one part of it, but the independent corroborating evidence that the state offered was the recovery of this assault rifle. Well, let me ask you that. I've been reading these cases and I don't see where the court has really ever said that the gun itself is sufficient. What case would you direct us to, Ms. Powell, to support that actual suggestion that the mere presence of the rifle is basically the answer to the issue? So I would point you towards People v. Hanna, where in that case the defendant was just arguing the corpus delicti part of the claim, and in that case the defendant was detained when he was observed in an apartment along with a woman sitting on a bed. They were both sitting on a bed. And the woman was the one named in the search warrant. He was not. So he was detained pursuant to the search warrant and officers recovered a gun within the mattress of the bed. And this court held that the corpus delicti of the crime was established through the recovered firearm along with the defendant's incriminating statement. But the firearm was recovered in an area where the defendant at that time had exercised exclusive control and dominion, right? It was exclusive control, however. It was also joint because there was someone else with... Joint, okay, fine, joint. But at that point he was found, the gun was recovered from a place where the defendant had exclusive control, even if it was joint exclusive control. Isn't that the big thing that's different about this case versus Hanna and Spencer? No, control is not the determining factor for corpus delicti. No, but it's one of the elements. It's the second element. You have to have immediate and exclusive control. For corpus delicti, what you need to corroborate a defendant's incriminating statement is you need evidence that tends to show that a crime occurred. And this court has held that what tends to show a crime has occurred is the recovery of a firearm. In People v. Smith, the recovery of the firearm paired with defendant's statement corroborated his incriminating statement. Defendant, the bus driver in Smith, never testified that he saw defendant with the bag. Did he testify that he saw the defendant sitting in the back of the bus right next to the bag? He never saw him with the bag, but he saw him sitting in the same area where the bag was recovered. Right, they put the defendant in the area where the firearm was also found. Right, I mean, isn't that the problem with your case? Isn't that where the defendant makes their strongest point, that you can't put this defendant in the bedroom? We also have the case of People v. Spencer where the recovery of the firearm in that case was not immediately accessible to defendant. It was recovered above a kitchen cabinet. Weren't there other indicators that the defendant in that case was, in fact, residing in that residence? Yes, there were indicators of None of which you have in this case. No, we have defendant's statement that he lives here. Well, aside from the statement. But in Spencer also, there was ammunition found, and he was specifically tied to the room where first they recovered large sums of money and ammunition. Right? That's correct, yes. And then they observed him running out the door. There was also extensive evidence, physical evidence of residency, actual mail addressed to him at that particular location. So Spencer, I think, has certainly more factual information regarding the crime itself as opposed to this case. Well, the corroborating evidence that the State needs to corroborate defendant's statement, it doesn't need to prove the crime beyond a reasonable doubt. It only needs to tend to show or tend to confirm that a crime has taken place. And a firearm does that. The recovery of the firearm sufficiently corroborates defendant's statement that he found a firearm and he was going to sell that firearm. And that is only made for corpus delicti. And that is what we show here in this case. And the corpus delicti on that basis was sufficiently established. Do you think, though, there's a case that actually says what you're saying, that the actual recovery of a gun is enough to establish corpus delicti? Not an actual recovery of a gun, only that the evidence needs to tend to show the commission of an offense. And a firearm does that. And that's what we proved here in this case to corroborate his statement of control over this firearm. Just so I'm clear. Yes. It is alone and sufficient, the recovery of the firearm that establishes corpus delicti. That is correct. Okay. Yes. Anything further you'd like to add, Ms. Powell? Just give me a second. So for these reasons and the reasons stated in our brief, we respectfully request this court affirm defendant's convictions for armed habitual criminal and for unlawful possession of a weapon by a felon. Thank you. Ms. Moreno? You should probably confine yourself to the podium.  I'm going to go back to the first two arguments. I understand, Your Honor. I actually just have what I think are two pretty brief points. Just to clarify, counsel just stated that the trial court found Mendoza more credible. I believe that's not borne out in the record. The trial court found the defense witness credible and said the police testimony was internally conflicted. And then the judge made a statement saying that he found guilt because Mr. Jackson was known to have said he found the weapon. And as this court found in People Heed Leisure, when a trial judge bases a conviction solely on an uncooperated statement, it's evidence that the state failed to establish the corpus delicti. Did you cite that Maldonado case in your brief? No, Your Honor. I was just curious. I didn't see it. It was different because the defendant there I believe wasn't present, so I think the case is cited here more on point. But it was just I mentioned it in response to Your Honor's question. All right. That's fine. And finally, as Your Honor's pointed out, none of the cases cited by the state find that a recovery of a gun is sufficient to corroborate a statement. In all of those cases, Spencer, Hanna, and Smith, there was evidence of immediate and exclusive control. All right. For those of you who didn't, Your Honor, I'd ask that you reverse both of Mr. Jackson's convictions outright. All right. We thank you both for your arguments today. The case was well argued and well briefed, and it will be taken under advisement. Court is in stand security.